JOHN P. MOLDEN, Plaintiff-Appellee, v. ZADDOCK J.B. REID *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—88—3123

Opinion filed June 21, 1990.

Peter M. Barron, of Northbrook, for appellant Fitz J. Ogilvie.

Stanley L. Hill & Associates, P.C., of Chicago (Lawrence E. Sommers, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Defendant Fitz J. Ogilvie appeals from the trial court's denial of his section 2—1401 petition (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) to vacate an *ex parte* judgment. He contends that the trial court abused its discretion in denying the petition because he met the requirements for post-judgment relief, equitable considerations also warranted post-judgment relief, the trial court should have treated the allegations of the section 2—1401 petition as uncontroverted, the trial court should have held an evidentiary hearing on the section 2—1401 petition, and the trial court improperly awarded attorney fees and punitive damages to plaintiff.

On September 27, 1985, plaintiff, John P. Molden, filed a two-count complaint against Fitz J. Ogilvie and three other defendants, Zaddock J.B. Reid, Michael D. Campbell and Baldwin S. Barnes, jointly and severally. Only Ogilvie was served with summons, and the other defendants therefore are not involved in this appeal.

The gist of the complaint was that defendants fraudulently induced plaintiff to invest in a bankrupt business, gave him an $11,500 promissory note and failed to pay on the note. Plaintiff alleged that defendants misrepresented the financial condition and purpose of the business, the amount of the return on plaintiff's investment, the use to which his investment would be put and the risk involved. Count I

was based upon common law fraud, and count II was based upon the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). In both counts, plaintiff requested compensatory damages in the amount of $11,500, court costs and attorney fees. In count I, he also requested punitive damages in the amount of $100,000.

The sheriff of Cook County secured substitute service on Ogilvie on October 5, 1985, and an appearance and an answer were filed on his behalf on November 1, 1985, by attorney Brian Pedersen of 326 North Michigan Avenue in Chicago. The answer, but not the appearance, discloses that Pedersen worked for Hyatt Legal Services. The answer consisted of general denials of some of the allegations, and demands for strict proof of the remaining allegations.

Brian Pedersen apparently left Hyatt Legal Services in 1986. Another Hyatt attorney, David N. Schaffer, then assumed responsibility for the case at bar. When the case was presented on the April 7, 1986, progress call, an order was entered placing it on the trial call. The order was signed "Hyatt/Schaffer" with the same office address that Pedersen previously had provided.

Schaffer, however, failed to appear for the September 28, 1987, trial call, and Judge Lester D. Foreman accordingly assigned the case to Judge Louis J. Giliberto for prove up in December. (The September 28 order is not in the record on appeal.) At the prove up, the trial court found defendant liable for common law fraud, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*) and failure to pay on the promissory note. On December 22, 1987, the trial court entered an *ex parte* judgment in favor of plaintiff and against Ogilvie, and ordered Ogilvie to pay to plaintiff $50,000 in punitive damages, $11,500 in compensatory damages plus post-judgment interest at a rate of 9%, court costs, and $2,500 in attorney fees. The judgment reflects that an "Order of Default" was entered. Ogilvie, however, had filed an answer. Therefore, the judgment was not a default judgment; rather, it resulted from *ex parte* proceedings. See *Fabian v. Norman* (1985), 138 Ill. App. 3d 507, 512, 486 N.E.2d 335; *Ryan v. Bening* (1978), 66 Ill. App. 3d 127, 131, 383 N.E.2d 681; *Dils v. City of Chicago* (1978), 62 Ill. App. 3d 474, 479-80, 378 N.E.2d 1130.

On January 21, 1988, plaintiff filed a citation to discover assets and scheduled a hearing for February 11, 1988. On February 11, Schaffer filed an appearance for Ogilvie in the supplementary proceedings.

On April 11, 1988, Schaffer filed a petition pursuant to section 2—

1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) to vacate the orders entered on September 28 and December 22, 1987. He also filed Ogilvie's supporting affidavit. The section 2—1401 petition reflected that Schaffer's address still was 326 North Michigan Avenue in Chicago. An order entered on September 1, 1988, reflects that Schaffer had a new address at 6835 North Lincoln Avenue in Lincolnwood, Illinois.

The section 2—1401 petition and Ogilvie's affidavit asserted that Ogilvie had a valid defense because he was not an agent of Reid and did not engage in any scheme to defraud plaintiff. Ogilvie asserted further that he had diligently presented his defense in the original action because he had filed an appearance and an answer and had attended a deposition. He alleged further that he had diligently filed his petition to vacate because he contacted his attorney as soon as he received the citation summons, and his attorney then investigated the judgment, procured a computer printout of the docket history of the case and called plaintiff's lawyer. Finally, he claimed that the circumstances surrounding the *ex parte* judgment were unfair, unjust and unconscionable. He alleged that at the prove up plaintiff's attorney concealed the fact that defendant had filed an appearance in the case. He alleged further that plaintiff's attorney had violated section 2—1302 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1302) by concealing the orders of September 28 and December 22, which cast a cloud over the proceedings.

Several exhibits were attached to the section 2—1401 petition, including a copy of a computer printout of the docket history of the case. The printout disclosed in part as follows:

"09/22/87 Sorrentino, P.A.
Case Set On Assignment Call
09/28/87 Foreman, Lester D.
Advance Or Reset On Call
&ast; &ast; &ast;
12/22/87 Giliberto, Louis J.
Judgment For Plaintiff."

A handwritten word which looks like the word "default" appears next to the entry for September 28, 1987.

Plaintiff filed a response to the section 2—1401 petition. The response did not include a counteraffidavit. Judge Giliberto, who previously had presided over the *ex parte* prove up, held a hearing on the petition on September 16, 1988. At the hearing, the trial court observed that the petition to vacate and supporting affidavit consisted of conclusions and lies. The court stressed that no facts were alleged

to support the existence of a meritorious defense or the exercise of diligence. Furthermore, the trial court specifically characterized as a "lie" Schaffer's assertion that plaintiff's attorney had concealed defendant's appearance from the court at the prove up. The court affirmatively stated that it had seen defendant's appearance in the court file at the time of the prove up. The trial court also indicated that plaintiff's attorney could not be accused of having concealed the existence of the judgment because it was a matter of public record.

The trial court repeatedly asked Schaffer to state facts in support of the allegations in the section 2—1401 petition and supporting affidavit, but he was unable to do so. Instead, he told the court that Brian Pedersen had worked in a different branch office of Hyatt Legal Services, and he stated that that office might have received notice. Schaffer admitted that his firm had made a mistake in missing the September 28, 1987, trial call. Schaffer admitted further that he had failed to check the Chicago Daily Law Bulletin to determine when the case would be called for trial, that he had made no notation concerning the trial call and that his calendar contained only a "tickler" to check the case in February 1988.

When the trial court asked Schaffer where Ogilvie was, Schaffer replied that Ogilvie was not present in court for the hearing on the section 2—1401 petition because no evidentiary hearing was necessary. At the conclusion of the hearing, the trial court denied Ogilvie's section 2—1401 petition to vacate, and he has appealed.

■ Section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) provides the procedure for vacating a judgment after 30 days from the date of entry of the judgment. (See *Kaput v. Hoey* (1988), 124 Ill. 2d 370, 377-78, 530 N.E.2d 230; *Galligan v. Washington* (1987), 163 Ill. App. 3d 701, 707, 516 N.E.2d 894.) A section 2—1401 petition is addressed to the sound discretion and equitable powers of the trial court. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 221, 499 N.E.2d 1381.) The trial court's judgment may be set aside on appeal only in the event of an abuse of that discretion. (*Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 499 N.E.2d 1381; *Galligan v. Washington*, 163 Ill. App. 3d 701, 516 N.E.2d 894.) A litigant must demonstrate four elements in order to qualify for relief under section 2—1401: (1) a meritorious claim or defense, (2) due diligence in presenting it in the original action, (3) due diligence in presenting the section 2—1401 petition, and (4) the trial court's misapprehension of the claim, defense or facts, through no fault or negligence of the litigant. *Gayton v. Levi* (1986), 146 Ill. App. 3d 142, 148, 496 N.E.2d 1045; see also *Kaput v. Hoey*, 124 Ill. 2d at 378.

Section 2—1401 "is not to be utilized in order to protect a litigant from the consequences of his own mistakes or his counsel's negligence." (*Gayton v. Levi*, 146 Ill. App. 3d at 148.) In determining the reasonableness of the litigant's reason for not having acted sooner, the court must consider the conduct of the litigants and their attorneys. *Smith v. Airoom, Inc.*, 114 Ill. 2d at 222.

■ A petition to vacate an *ex parte* judgment should contain factual allegations showing a meritorious defense and due diligence in attempting to present that defense to the trial court. (See *Berkson v. Quality Beauty Supply Co.* (1976), 36 Ill. App. 3d 877, 880, 344 N.E.2d 629.) The petition must be supported by an affidavit or other appropriate showing with respect to matters not of record. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401(b); see also *Okumura v. Nisei Bowlium, Inc.* (1976), 43 Ill. App. 3d 753, 756, 357 N.E.2d 187.) The trial court's decision will not be reversed in the absence of a showing of an abuse of discretion. *Berkson v. Quality Beauty Supply Co.*, 36 Ill. App. 3d at 880.

■ In the case at bar, Ogilvie alleged that he had a meritorious defense because he did not engage in a scheme to defraud plaintiff and he was not Reid's agent. These gratuitous allegations are bare conclusions of law. (*Cf. Graf's Beverages of Illinois, Inc. v. Tauber* (1977), 50 Ill. App. 3d 1047, 1051-52, 366 N.E.2d 150.) Mere conclusions are not treated as true for the purpose of a petition for post-judgment relief (see *People v. Jayne* (1977), 52 Ill. App. 3d 990, 1015, 368 N.E.2d 422) and are not sufficient to warrant such relief (see *State Bank v. Fair Winds, Inc.* (1979), 73 Ill. App. 3d 597, 600, 392 N.E.2d 638). Nor do the allegations of Ogilvie's answer to plaintiff's complaint demonstrate the existence of a meritorious defense, because the answer was partly evasive and was partly comprised of a general denial. There was no affirmative defense explaining defendant's claims. See *Graf's Beverages of Illinois, Inc. v. Tauber*, 50 Ill. App. 3d at 1052; *cf. Fabian v. Norman* (1985), 138 Ill. App. 3d 507, 510-11, 486 N.E.2d 335.

In a belated effort to demonstrate the requisite meritorious defense, Ogilvie has presented facts which are extrinsic to the record on appeal. Attached to his appellate brief is a portion of a deposition transcript which was not included in the record. We may not consider this information on review because it was not a part of the trial court proceedings and is *dehors* the record on appeal. See *Okumura v. Nisei Bowlium, Inc.*, 43 Ill. App. 3d at 755.

For all of the above reasons, Ogilvie failed to demonstrate the existence of a meritorious defense as to the underlying liability. This

alone would be sufficient to disqualify him from receiving post-judgment relief.

■■ However, Ogilvie also has failed to establish that he exercised due diligence in the original action. We have reached this conclusion without taking into consideration the extrinsic materials improperly appended to plaintiff's appellate brief. See *Okumura v. Nisei Bowlium, Inc.*, 43 Ill. App. 3d at 755.

Schaffer attempted to excuse his failure to answer the September 28, 1987, trial call by claiming that he and Pedersen were not based in the same branch office of Hyatt Legal Services. However, as late as the April 11, 1988, petition to vacate, Schaffer was still listing his address as 326 North Michigan Avenue, which was the same address that Pedersen had used.

Furthermore, Schaffer's name appears on the April 7, 1986, progress call order placing the case on the trial call, which suggests that he was aware of the pendency of the case on the trial call. Schaffer admitted, however, that he made no notation regarding the trial call, that he never checked the Law Bulletin for the trial call date (see Cook County Circuit Court Rule 5.1(a)), that he missed the trial call and that his calendar contained only a "tickler" to check the case in February 1988. His negligence is not remediable through section 2—1401.

Nor is the failure of plaintiff's attorney to notify Ogilvie of the judgment remediable through section 2—1401. The status of the case was a matter of public record. Although the computer printout did not specify the nature of the proceedings on September 28, 1987, activity on that date was apparent from the printout, and the printout clearly disclosed the entry of a judgment for plaintiff on December 22, 1987. We therefore reject Ogilvie's contention that plaintiff's failure to provide notice of the September 28 and December 22 orders cast a cloud on the proceedings and warranted the relaxation of the due diligence standard.

■■ Nor are we persuaded by Ogilvie's reliance upon plaintiff's alleged delay in enforcing the *ex parte* judgment. According to Ogilvie, plaintiff waited to enforce the December 22, 1987, judgment long enough to delay defendant's discovery of the judgment until more than 30 days after its entry. Plaintiff initiated supplementary proceedings on January 21, 1988. On January 27, 1988, Ogilvie received substitute service of the citation to discover assets. There was no showing that plaintiff gained any unfair, unjust or unconscionable advantage from this short delay. (See *Smith v. Airoom, Inc.*, 114 Ill. 2d at 227-28.) We are satisfied that the above equitable considerations

did not warrant the imposition of post-judgment relief at least as to liability.

▉ Ogilvie contends next that the trial court should have treated the section 2—1401 petition as uncontroverted. The conclusional nature of the allegations discredits this contention. Plaintiff was not required to file a counteraffidavit to deny legal conclusions or to controvert the petition.

▉ Next, Ogilvie contends that the trial court should have held an evidentiary hearing on his section 2—1401 petition because the parties disputed the "central factual allegations" of the petition. This contention is inconsistent with his assertion that his section 2—1401 petition should have been treated as uncontroverted. Furthermore, the contention is contrary to his previous position. During the hearing on the section 2—1401 petition, Schaffer orally argued that he had not advised Ogilvie to appear in court because his section 2—1401 petition did not require an evidentiary hearing. We therefore reject Ogilvie's contention that the trial court should have held an evidentiary hearing on his section 2—1401 petition.

▉ Finally, even though Ogilvie failed to establish the existence of a meritorious defense as to the underlying liability, we are concerned about the *ex parte* award of damages in this case, particularly punitive damages, which are not favored in the law. (See *Smith v. Dunaway* (1966), 77 Ill. App. 2d 1, 5, 221 N.E.2d 665.) In *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 614, 190 N.E.2d 348, the Illinois Supreme Court criticized the "precipitate manner in which damages were assessed" and stated as follows:

> "The mere fact that a defendant is defaulted does not give to the plaintiff a right or claim to the assessment of damages unrelated to liability ***. ***
>
> *** Although defaulted, where the action is in tort or for an unliquidated claim or amount, a defendant nonetheless has the right to be heard on the matter of damages."

(See also *Goczeski v. Horizon Development Corp.* (1981), 102 Ill. App. 3d 6, 9, 428 N.E.2d 1180; *Graf's Beverages of Illinois, Inc. v. Tauber*, 50 Ill. App. 3d at 1052-53; *612 North Michigan Avenue Building Corp. v. Factsystem, Inc.* (1975), 34 Ill. App. 3d 922, 928, 340 N.E.2d 678; but *cf. Joseph A. Thorsen Co. v. Evans* (1980), 82 Ill. App. 3d 1119, 1125, 403 N.E.2d 666.) The question of damages is peculiarly within the province of the jury (see *Chambers v. Rush-Presbyterian-St. Luke's Medical Center* (1987), 155 Ill. App. 3d 458, 467, 508 N.E.2d 426, *appeal denied* (1987), 116 Ill. 2d 549, 515 N.E.2d 102) and the defendant is entitled to "cross-examine plaintiff's witnesses

and introduce any material evidence bearing on damages, take all proper measures to preserve questions in those respects for review, and request the giving of pertinent instructions." *Smith v. Dunaway*, 77 Ill. App. 2d at 6.

Turning to the case at bar, we believe that Ogilvie should have an opportunity to contest the issue of damages. We therefore remand the cause for the redetermination of punitive and compensatory damages, court costs, and attorney fees.

The judgment of the circuit court of Cook County is affirmed in part and reversed in part, and the cause is remanded.

Affirmed in part; reversed in part, and cause remanded.

McMORROW, P.J., and JOHNSON, J., concur.